# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| COLLEEN MCFARLAND, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:20-cv-85 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| HONEYWELL INTERNATIONAL, INC., | : | |
| | : | |
| Defendant. | : | |

---

### ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 11)

---

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 11) (the "Motion"), filed by Defendant Honeywell International Inc. ("Honeywell") pursuant to Fed. R. Civ. P. 12(b)(6). The Motion is fully briefed and ripe for review. (Docs. 11, 13, 15.) In her Second Amended Complaint (Doc. 10) ("SAC"), Plaintiff Colleen McFarland ("McFarland") brings two counts: (1) violation of the Ohio Whistleblower Statute, Ohio Revised Code ("R.C.") § 4113.52; and, (2) wrongful termination in violation of public policy. For the reasons discussed below, the Court **GRANTS, IN PART, AND DENIES, IN PART,** the Motion.

### I.    BACKGROUND

McFarland originally filed this action in the Court of Common Pleas for Champaign County, Ohio on February 3, 2020. Honeywell removed it to this Court on March 6, 2020 on diversity jurisdiction grounds. According to the SAC, McFarland was employed in Honeywell's Human Resource department from January 15, 2018 until her termination on August 21, 2019.

1

Among other allegations, McFarland alleges that she reported to her supervisor that a Honeywell employee had falsified records to meet revenue targets, that Honeywell terminated her employment in retaliation for doing so, and that Honeywell's stated reason for terminating her was pretextual.  (*See* Doc. 10 at ¶¶ 9, 15, 27, 28, 33, 35, 37.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this rule "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).  Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55.  However, the Court is not bound to accept as true a legal conclusion couched

2

as a factual allegation. *Id*. at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

### III.     ANALYSIS

The Court first addresses Honeywell's argument that, although McFarland did not attach to the SAC a July 25, 2019 email from McFarland to Honeywell's Access Integrity Helpline on which she carbon-copied her supervisor (the "July 25 Written Report"), it is the basis for McFarland's claims and is specifically referenced in the SAC. Therefore, according to Honeywell, it is necessarily incorporated into the SAC, and Honeywell may attach it to the Motion and rely on it.[1] The Court agrees. *Luis*, 833 F.3d at 626; *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) ("documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim") (internal quotation marks omitted); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336-37 (6th Cir. 2007) ("documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss" and, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment"). The SAC states that, "[d]ue to the termination [of her employment with Honeywell], McFarland had no access to her work emails." (Doc. 10 at ¶ 32.) Therefore, it is not surprising that McFarland did not attach a copy of the July 25 Written Report to the SAC, although—as Honeywell points out—she did reference it. (*See, e.g., id.* at ¶¶ 23, 25, 50; Doc. 11

---

[1] Honeywell did attach the July 25 Written Report to the Motion as its Exhibit A and separately filed it. (*See* Doc. 11 at PAGEID # 57; Doc. 12.)

3

at PAGEID # 57.)

McFarland does not argue otherwise or object to consideration of the July 25 Written Report. Among other things, in the July 25 Written Report, McFarland requested that a business conduct incident report be opened, and it indicates that she believed there to be a violation of "Aero Procedures" and that an employee had potentially falsified business management software records. Honeywell states that, for purposes of the Motion, it does not dispute that McFarland made an oral report to her supervisor regarding the same subject matter as the July 25 Written Report.

Next, the Court addresses the law applicable to McFarland's claims.[2] When a federal court sits in diversity, it applies substantive law of the forum state. *Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019); *see also* 28 U.S.C. § 1652. Ohio law governs McFarland's two claims, and the Court "must apply the State's law as announced by its highest court." *Croce*, 930 F.3d at 792. "If the Ohio Supreme Court has not provided guidance on the issue at hand, [then the Court] may consider the decision of the State's courts of appeals, relevant dicta from the Ohio Supreme Court, as well as other sources…." *Id.*

### A. Claim for Violation of Ohio's Whistleblower Statute (Count 1)

"Ohio's Whistleblower statute provides an employee protection from employer retaliation under certain circumstances when the employee reports activity of fellow employees in the workplace." *Fox v. City of Bowling Green*, 76 Ohio St. 3d 534, 668 N.E.2d 898, 901 (Ohio 1996).

---

[2] The Court notes that, despite McFarland filing the original complaint in state court, the SAC—which McFarland filed after Honeywell's removal on diversity jurisdiction grounds—is subject to federal pleading standards (as set forth above) for purposes of the Motion. *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 771-72 (E.D. Ky. 2017) ("[f]ederal courts sitting in diversity apply federal procedural law," and the "Federal Rules of Civil Procedure apply to a civil action after it is removed from a state court") (citing Fed. R. Civ. P. 81(c)(1) and, among other cases, *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015) and *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010)); *see also Peña v. City of Rio Grande City, Tx.*, 879 F.3d 613, 617 (5th Cir. 2018) (when defendants challenge pleadings in a removed action, federal pleading standards control upon removal). The Court also is compelled to note its concern that McFarland relies on caselaw pre-dating *Iqbal* and *Twombly* to argue the applicable standard for ruling on the Motion.

4

The statute "was designed to give whistleblowers some protection in Ohio's employment-at-will environment." *Id.* at 902.

"In order to establish a violation of the Ohio whistleblower statute, a plaintiff must first make a prima facie case by showing that 1) he or she engaged in activity which would bring him or her under the protection of the statute, 2) was subject to an adverse employment action and 3) there was a causal link between the protected activity and the adverse employment action." *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 271 (6th Cir. 2007) (internal quotation marks omitted); *see also Bennett v. Columbiana Cnty. Coroner*, 2016-Ohio-7182, 72 N.E.3d 242, 255 (Ohio Ct. App. 2016). As to the first element, "[i]n order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52." *Contreras v. Ferro Corp.*, 73 Ohio St. 3d 244, 652 N.E.2d 940 (Ohio 1995) (Syllabus). "Failure to do so prevents the employee from claiming the protections embodied in the statute." *Id.*

Section (A) of the statute[3] identifies three circumstances in which an employee is protected for whistleblowing activity, including subsection (A)(1) addressing reports of violations that the "employer has authority to correct" and subsection (A)(3) addressing reports of violations "by a fellow employee":

> (1) (a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. …
>
> …

---

[3] The Ohio Whistleblower Statute has been amended since 1996, most recently in 2006. R.C. § 4113.52.

5

> (3) If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

R.C. § 4113.52(A)(1)(a), (A)(3).  Thus, although much of the language in subsections (A)(1)(a) and (A)(3) is similar, there are some notable differences, such as subsection (A)(3) including violations of "any work rule or company policy of the employee's employer." *Id.*  Also, the Ohio Supreme Court has clarified that, "to gain the protection of R.C. 4113.52(A)(3), an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred." *Fox*, 668 N.E.2d at 901.

Section (B) of the Ohio Whistleblower Statute, in the words of the Ohio Supreme Court, "carries the statute's punch"—"what the employer may not retaliate against, and what actions bring about employer liability under the statute." *Fox*, 668 N.E.2d at 901.  Section (C) includes a requirement for an employee who makes a report under subsections (A)(1) or (A)(2).  And, Section D affords a private right of action to an employee against whom an employer takes disciplinary or retaliatory action as a result of the employee having filed a report under Section A.

Here, the Motion attacks the sufficiency of McFarland's allegations that her activity brings her under the statute's protection.  Honeywell argues that, "despite Plaintiff's conclusory allegation that she 'reasonably believed' she was reporting a felony to her employer," the July 25 Written Report demonstrates otherwise and, therefore, the SAC must be dismissed.  (Doc. 11 at PAGEID # 52, 55.)  According to Honeywell, the July 25 Written Report "is limited to a complaint

6

of internal policy violations; it contains no statements reflecting that Plaintiff reasonably believed the concerns she reported were either a 'criminal offense … likely to cause an imminent risk of physical harm or a hazard to public health or safety' or a felony."  (*Id.* at PAGEID # 59.)  McFarland counters that she only needed to have a reasonable belief that she was reporting criminal activity, and that the SAC contains facts sufficient to state a claim upon which relief can be granted.

The SAC states that Count 1 alleges a violation of the Ohio Whistleblower Statute, but it does not identify the statutory subsection(s) on which McFarland bases her claim for protection.  Her opposition brief does not bring much clarity.  (*See* Doc. 13 at PAGEID # 68, 70 (including in her overarching argument that she pleads facts sufficient to establish a claim for retaliation in violation of subsection (A)(3), but later titling her section in support of Count 1: "McFarland Properly Plead a Claim For Retaliation Under R.C. § 4113.52(A)(1)").)  Regardless, the Court finds that the SAC sufficiently states a claim upon which relief can be granted pursuant to R.C. § 4113.52(A)(3), but not pursuant to R.C. § 4113.52(A)(1).

Again, Honeywell takes issue that the July 25 Written Report "only alleges violations of internal Honeywell policy."  (Doc. 15 at PAGEID # 92.)  Yet, while subsection (A)(1) of the Ohio Whistleblower Statute does not cover such a violation, subsection (A)(3) expressly does.  The text of subsection (A)(3)—set forth above—contains five phrases that identify its requirements.[4]  First, the SAC alleges that McFarland became aware of the alleged violation in the course of her

---

[4] "[1] If an employee becomes aware in the course of the employee's employment of [2] a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and [3] the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, [4] the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and [5] subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation." R.C. § 4113.52(A)(3).

7

employment with Honeywell.  (*See* Doc. 10 at ¶¶ 9, 14-15, 27, 32; Doc. 12.)  Second, the SAC alleges that the alleged violation was by a fellow employee of a work rule or company policy at Honeywell.  (*See* Doc. 10 at ¶¶ 14-15, 32; Doc. 12.)  Third, the SAC alleges that McFarland reasonably believed that the violation was a felony.  (*See* Doc. 10 at ¶¶ 14-19, 45-48.)  Fourth, the SAC alleges that McFarland orally notified her supervisor of the alleged violation.  (*See* Doc. 10 at ¶¶ 22, 24, 41, 43, 49.)  Fifth, the SAC alleges that McFarland subsequently filed with that supervisor a written report that—at least for purposes of the Motion—provides sufficient detail to identify and describe the alleged violation.  (*See* Doc. 10 at ¶¶ 23, 25, 26, 32, 50; Doc. 12.)

Although the Court recognizes that employees "must strictly comply with the dictates of" the Ohio Whistleblower Statute in order to be "afforded protection as a 'whistleblower,'" Honeywell asks this Court to read additional, unsupported requirements into the statute. *Contreras*, 652 N.E.2d 940 (Syllabus).  The Court does not find support in the statute's text or Ohio caselaw for a requirement that an employee specifically use the word "felony" (or other such buzzword) in the written report.  *Fox*, 668 N.E.2d at 901 ("R.C. 4113.52(A)(3) sets forth what an employee needs to do to fall under the statute's protection for reporting activities of co-workers"). Additionally, the Court disagrees with Honeywell that there is necessarily a conflict between the July 25 Written Report and McFarland's allegation that she "reasonably believed" that the (alleged) violation was a felony.  The cases on which Honeywell relies for its arguments involved motions for summary judgment in Ohio state court, and they do not support granting Honeywell's motion to dismiss McFarland's whistleblower claim under the applicable standard, at least with respect to protection under subsection (A)(3).

Here, accepting the factual allegations of the SAC as true and construing them in a light most favorable to McFarland, the Court finds that it contains sufficient factual matter "to state a

claim to relief that is plausible on its face" for violation of the Ohio Whistleblower Statute pursuant to protection under R.C. § 4331.52(A)(3). *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 554-55. The SAC includes "factual content that allows the court to draw the reasonable inference that [Honeywell] is liable for the misconduct alleged." *Id.* Of course, this finding does not mean that McFarland will succeed on her claim and should not be construed as the Court determining any portion of the merits of her claim.

However, the Court also finds that the SAC does not adequately state a claim for protection under subsection (A)(1) of the Ohio Whistleblower Statute. As shown above, that subsection does not apply to alleged violations of work rules or company policies. The SAC does not contain sufficient factual matter to identify "a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct," as required for protection under that subsection. R.C. § 4113.52(A)(1)(a).

### B. Claim for Wrongful Termination in Violation of Public Policy (Count 2)

As mentioned above, "[i]n Ohio, the common-law doctrine of employment at will governs employment relationships." *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 956 N.E.2d 825, 829-30 (Ohio 2011). Thus, "[t]he act of terminating an at-will employee's relationship with an employer usually does not give rise to an action for damages." *Id.* at 830. "However, if an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Id.*

The Ohio Supreme Court has identified four elements for a claim of wrongful discharge in violation of public policy:

> 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Dohme*, 956 N.E.2d at 829 (internal quotation marks omitted) (italics in original). The first two elements (clarity and jeopardy) are issues of law for a court's determination. *Id.* Regarding the first element (clarity), among other things, "a terminated employee must articulate a clear public policy by citation to specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." *Dohme*, 956 N.E.2d at 829, 831.

Honeywell argues that McFarland's claim fails on both the clarity and jeopardy elements. Regarding the clarity element, Honeywell asserts that McFarland fails to articulate a "clear public policy." In turn, McFarland argues that the Court should deny the Motion with respect to Count 2 "[b]ecause McFarland has pled facts that sufficiently allege all the elements of her termination in violation of public policy claim." (Doc. 13 at PAGEID # 79.)

The SAC references two alleged public policies. First, McFarland alleges: "A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law." (Doc. 10 at ¶ 57.) But this allegation fails to "articulate a clear public policy by citation to specific provisions" in the Ohio statutes, administrative regulations, or common law. *Dohme*, 956 N.E.2d at 829-31 ("[u]nless the plaintiff asserts a public policy and identifies federal or state constitutional provisions, statutes, regulations, or common

10

law that support the policy, a court may not presume to sua sponte identify the source of that policy").

Second, McFarland alleges: "A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, including R.C. § 1701.37 *et seq.*, against fraudulent accounting." (Doc. 10 at ¶ 56.) In that paragraph, McFarland does articulate a public policy and cite to a specific Ohio statute as its source. However, in the end, it does not save her claim from dismissal.

The statute that McFarland identifies (R.C. § 1701.37) is a portion of the General Corporation Law chapter of Ohio's revised code, and it is titled: "Books, records of account, minutes of proceedings and shareholders' records." The statute states, in part, that "[e]ach corporation shall keep correct and complete books and records of accounts, together with" minutes of various proceedings and shareholder records. R.C. § 1701.37(A). It also provides a company's shareholders with rights to have a list of voting shareholders produced at a shareholder meeting and to inspect the company's books and records. R.C. § 1701.37(B), (C), (D).

The Ohio Supreme Court has not ruled whether R.C. § 1701.37 gives rise to a wrongful termination in violation of public policy claim under Ohio law. In fact, neither party has directed the Court to any caselaw involving that statute as a basis for such a claim, and the Court has found none. However, based on the statutory language and purpose that the statute seeks to accomplish,[5] and considering guidance from the Ohio Supreme Court and other relevant caselaw, the Court finds that Ohio law does not recognize a public policy exception to the employment-at-will doctrine for employees who allege that they were terminated in violation of a public policy

---

[5] *See Crowley v. St. Rita's Medical Ctr.*, 931 F. Supp. 2d 824, 829 (N.D. Ohio 2013) ("[w]here the clear public policy is based on statute, the Ohio Supreme Court looks to the legislature's intent in enacting it by first looking to the statutory language and the purpose it seeks to accomplish") (internal quotation marks omitted and alterations adopted) (citing *Sutton v. Tomco Machining, Inc.*, 129 Ohio St. 3d 153, 950 N.E.2d 938 (Ohio 2011)).

11

manifested in R.C. § 1701.37.

The district court in *Crowley* discussed how some courts, "including the Ohio Supreme Court, while not expressly limiting statute-based *Greeley* claims[6] to those paralleling the whistleblower statute, have in effect permitted such claims only where the statute includes a duty to report, retaliation protection, or conduct affecting the public or employee health and safety." *Crowley*, 931 F. Supp. 2d at 830. However, the district court in *Crowley*, citing to cases from a federal district court and two Ohio courts of appeal, also discussed how some other courts have taken a more expansive view. *Id.* at 830-31. Having considered the different views, the district court in *Crowley* found "more persuasive the reasoning of the Ohio Courts that require the public policy invoked in a *Greeley* claim to parallel the policies underlying the whistleblower statute or protect employee or public safety." *Id.* at 831 ("[t]he courts of Ohio generally have found that *Greeley* claims cannot lie with every public policy, even 'good' ones, and appropriately so" because "[w]ithout these limitations, *Greeley* claims could evolve from exceptions to the employment at-will doctrine to the rule itself").

This Court agrees with the district court's finding in *Greeley* and believes it to be the view more supported by Ohio Supreme Court caselaw. *See, e.g., Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St. 3d 228, 551 N.E.2d 981 (Ohio 1990) (public policy was sufficiently clear where Ohio's General Assembly had adopted a specific statute forbidding an employer from discharging or disciplining an employee on the basis of a particular circumstance or occurrence); *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 773 N.E.2d 526, 530-31 (Ohio 2002) (federal Family and Medical Leave Act, which "expresses a clear public policy in favor of a qualified

---

[6] In Ohio, claims for wrongful termination in violation of public policy are sometimes referred to as *Greeley* claims, a reference to the Ohio Supreme Court case of *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St. 3d 228, 551 N.E.2d 981 (Ohio 1990).

employee being allowed to take medical leave to care for a parent with a serious health problem," "manifests a sufficiently clear public policy to satisfy the clarity element of a wrongful-discharge tort claim"); *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 875 N.E.2d 36, (Ohio 2007) (finding clarity element satisfied where, through R.C. §§ 4112.02 and 4112.14 (unlawful discriminatory practices and age discrimination), it was shown that Ohio "has a clear public policy against age discrimination in the employment setting").

The statute on which McFarland relies for her claim (R.C. § 1701.37) does not reference or concern employment, employees, or termination/discharge of employees. It also does not reference or concern a duty to report a violation, retaliation protection, or conduct that affects the health or safety of the public or of employees. This stands in contrast to statutes that the Ohio Supreme Court has recognized articulate a clear public policy supporting a cause of action for wrongful termination as an exception to the general employment-at-will doctrine. *Id.*; *see also Miracle v. Ohio Dep't of Veterans Servs.*, 157 Ohio St. 3d 413, 137 N.E.3d 1110, 1113 (Ohio 2019) ("[t]o determine whether these statutes [identified by plaintiff] express <u>a clear public policy against termination</u> under the circumstances alleged by [plaintiff] ….") (emphasis added); *Painter v. Graley*, 70 Ohio St. 3d 377, 639 N.E.2d 51, 56 (Ohio 1994) ("to state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of <u>discharging him [or her]</u> contravened a 'clear public policy'") (emphasis added).

McFarland's cited cases do not show otherwise. And, while requiring that every corporation keep "correct and complete books and records of account" may reflect good public policy, it is not the type of public policy that Ohio law recognizes may be the basis for a claim of wrongful termination in violation of public policy. *Id.*; *McGowan v. Medpace, Inc.*, 2015-Ohio-3743, 42 N.E.3d 256, 263 (Ohio Ct. App. 2015) (while the insurance fraud statute at R.C. 2913.47

13

"arguably established a valid public policy against insurance fraud, it cannot serve as the basis for an exception to the employment-at-will doctrine," and while "HIPPA manifests an important and useful public policy, … the protection of patient privacy is not the type of public policy" that supports a claim for wrongful termination in violation of public policy). Moreover, Ohio's Supreme Court has stressed that the wrongful-termination-in-violation-of-public-policy cause of action is an exception to the generally applicable employment-at-will doctrine. *See, e.g., Painter*, 639 N.E.2d at 56. As one Ohio appellate court explained:

> [A]bsent a narrow interpretation of the types of public policy applicable to these claims, the exception becomes the rule. With the continued and ongoing explosion in statutes, governmental regulations, and policies found under the Ohio Revised Code and the Ohio Administrative Code, as well as federal laws and regulations, if exceptions to the at-will-employment doctrine are not narrowly construed, the so-called 'exceptions' will speedily and overwhelmingly undermine and eliminate the concept of at-will employment in this state.

*McGowan*, 42 N.E.3d at 262.

Finally, McFarland says that "Ohio courts have consistently found that federal laws clearly establish public policy of Ohio." (Doc. 13 at PAGEID # 77.) But even if that is the case, McFarland fails to show why it matters here given that nowhere in the SAC does she reference a federal law.[7] In the end, Count 2 fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Dohme*, 956 N.E.2d at 829; *Nelson v. A Place For Mom, Inc.*, No. 3:19-cv-377, 2020 WL 635797, 2020 U.S. Dist. LEXIS 23669, at *5 (S.D. Ohio Feb. 11, 2020) (granting motion to dismiss amended complaint for failure to state a claim, and finding that "Ohio law does not recognize a public policy exception to the employment-at-will doctrine for employees who allege that they were terminated in violation of a public policy manifested in HIPAA"); *Crowley*, 931 F.

---

[7] While McFarland references the Sarbanes-Oxley Act of 2002 in her opposition memorandum, nowhere is that law referenced in the SAC. McFarland also states that she is entitled to plead alternative claims. Honeywell agrees, but points out that such claims still must be viable or else they may be dismissed for failure to state a claim on which relief can be granted.

Supp. 2d at 829, 831 (R.C. § 1702.54, which prohibits the falsification of corporate documents when done with the intent to deceive, does not give rise to a wrongful termination in violation of public policy claim).

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS, IN PART, AND DENIES, IN PART,** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 11). The Motion is granted with respect to Count 2 of Plaintiff's Second Amended Complaint (Doc. 10). This case will proceed on McFarland's remaining claim ("Count I: Violation of Ohio Whistleblower Statute R.C. § 4113.52"), but that claim (as pleaded) is limited to a claim that she engaged in activity that would bring her under the protection of the statute pursuant to its subsection (A)(3).[8]

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, August 12, 2020.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[8] The Court directs the attention of McFarland's counsel to Dayton General Order 12-01 on Discovery and Motion Practice at 2.3.3 (requiring that "[t]he text for the body of memoranda must be in at least twelve point type," without any exception for block quotes).